**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KOULA KRNICH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-5358 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| FPC CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Ten years into a graphic design position, Koula Krnich received a new supervisor. He didn't stay her boss for long. Within six months, the new supervisor terminated her. Krnich, then in her early 50s, had a decade of experience, but she had no formal education in graphic design. Her replacement had a college degree in graphic design, and was in her late 20s.

Krnich responded by suing her former employer, FPC Corporation. She claims that FPC terminated her because of her age, not because of her work performance.

FPC now moves for summary judgment, arguing that it replaced Krnich with a better-trained and more qualified employee, and that there is no evidence of age discrimination. For the reasons stated below, FPC's motion is granted.

### Factual Background

In 2006, Koula Krnich started working at FPC Corporation, a manufacturer of adhesive and fastening products (like glue guns). *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶ 5 (Dckt. No. 53). She began in customer service. *Id.* In 2007, she transitioned to a graphic design position, her first job in that area in her career. *Id.* At that point, she was 42 years old. *Id.*

She didn't have any prior experience in graphic design. *Id.* at ¶¶ 7, 13. Krnich received on-the-job training from Mike Praner, her direct supervisor until 2015, and she learned from internet videos, too. *Id.* at ¶ 7. Krnich used Corel software to design packaging and documents. *See* Def.'s Statement of Facts, at ¶¶ 15–16 (Dckt. No. 50).[1]

By 2017, Krnich was a 10-year veteran of the job, and she was in her early 50s. *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶ 5 (Dckt. No. 53); Def.'s Resp. to Pl.'s Statement of Additional Facts, at ¶ 17 (Dckt. No. 54). She was the only graphic designer at FPC. *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶ 8. So things apparently went well enough for her to stay in the same job for a decade.

But in 2017, the company made some changes, and she received a new boss in the process. FPC management established a new department to handle marketing and product promotion. *Id.* at ¶ 10. The company hired David Ullmann to lead the department. *Id.* at ¶¶ 10, 11. From 2017 until her termination in 2018, Krnich worked in the marketing department and reported to Ullmann. *Id.* at ¶ 11.

Ullmann had different views about software than his predecessor. Ullmann considered Adobe software products (not Corel) to be the industry standard. Since some FPC printers used Adobe, employees often needed to convert Corel files to Adobe for printing. *Id.* at ¶ 19. But the conversion process did not always work properly. *Id.* Sometimes the conversion process altered the content of the files, which created additional problems. *Id.* It took effort to get the right content into the right format. *Id.*

---

[1] In response to FPC's statement of facts, Krnich denied that she used Corel software. *See* Pl.'s Resp., at ¶ 16 (Dckt. No. 53). But in her affidavit, Krnich admitted that "[d]uring most of my employment at FPC, we used Corel software . . . ." *See* Krnich Aff., at ¶ 2 (Dckt. No. 53-2).

Krnich was not trained to use Adobe.  *Id.* at ¶ 18.  The unfamiliarity with Adobe seems to have set the stage for problems.

The parties paint different pictures of the quality of Krnich's work in the months before her termination.  FPC presented evidence that Krnich regularly made mistakes, including: (1) improperly arranging a picture to cover related text; (2) inserting malformed sentences in a published catalog; (3) leaving errors in manufactured packaging; and (4) sending files to packaging printers with incorrect color formats and numbers of colors.  *See* Def.'s Statement of Facts, at ¶¶ 22–27, 29 (Dckt. No. 50).

Ullmann believed these errors were significant – beyond the normal back-and-forth – and below the standards of a professional graphic designer.  *Id.* at ¶¶ 22–29, 32.  Ullmann also believed that Krnich repeated these errors, demonstrating that she was not learning from her mistakes.  *Id.* at ¶¶ 33–34.  In his view, the mistakes made the design process take longer, too. *Id.* at ¶ 34.

Krnich admits that she occasionally made mistakes, which she characterizes as minor. But she attributes these mistakes to the normal back-and-forth design process.  *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶ 22 (Dckt. No. 53); Pl.'s Statement of Additional Facts, at ¶ 8 (Dckt. No. 53).

Krnich also gives a few reasons why, in her view, those mistakes were not the end of the world.  For example, she never received any discipline.  *See* Pl.'s Statement of Additional Facts, at ¶ 6 (Dckt. No. 53).  Many of the errors did not involve final products.  *Id.* at ¶ 9.  And Michael Kamins, the President of FPC, approved her work.  *Id.*

Krnich and FPC also dispute whether Krnich's superiors commented on her age before her termination.  Krnich presented evidence that Ullmann commented that "all the young college

3

students" use Adobe Photoshop when expressing his desire for Krnich to learn the software. *Id.* at ¶ 10.

But Krnich does not offer evidence about when Ullmann made that comment. There is no evidence that he made it more than once, either. And there is no evidence that he made that comment when discussing her termination.

Krnich also offered evidence about statements made by Michael Kamins (again, the President of FPC) and Patrick Kamins (the Vice President). They compared Krnich to a younger employee in the marketing department, Emily Michka, by referring to their ages.

Specifically, Michael Kamins and Patrick Kamins stated, "I'll get the younger girl to do it," and "there are a lot of little Emilies (referring to Michka) around here, Koula." *Id.* at ¶¶ 12–13. Michael Kamins also commented that he "could just hire young college students who would be able to use newer software programs," and that young people have great ideas. *Id.* at ¶¶ 14–15.

Ullmann believed that FPC needed a graphic designer with more expertise and training than Krnich. *See* Def.'s Statement of Facts, at ¶ 36 (Dckt. No. 50). Krnich denies that Ullmann had that belief, but she doesn't offer any evidence that he *didn't* have that belief. *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶ 36 (Dckt. No. 53).

Ullmann ultimately decided to let Krnich go. On March 2, 2018, FPC terminated Krnich during an in-person meeting. *Id.* at ¶ 40. FPC informed Krnich that the company had hired someone with greater proficiency and a college degree in graphic design (Stephanie Daniel) to take her place. *Id.*

Michael and Patrick Kamins deferred to Ullmann's decision of termination. *See* Def.'s Statement of Facts, at ¶ 36 (Dckt. No. 50). Once again, Krnich denies it. But once again, she

offers no contrary evidence.  She points to a collection of evidence, but none of it supports the notion that Michael and Patrick Kamins *didn't* defer to Ullmann.  *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶ 36 (Dckt. No. 53).

On December 17, 2018, Krnich filed a Charge of Discrimination with the EEOC.  *Id.* at ¶ 4.  She alleged age discrimination.  *Id.*; *see also* Charge of Discrimination, at 2 of 4 (Dckt. No. 1-1).

The EEOC responded by issuing a Notice of Right to Sue on June 6, 2019.  *Id.* at 4 of 4. According to the notice, Krnich had 90 days from receiving the notice to sue based on the EEOC Charge.  *Id*.  Krnich filed this lawsuit against FPC on August 8, 2019, within the 90-day deadline.  *See* Cplt. (Dckt. No. 1).

The complaint includes four Counts.  The first claim is age discrimination under the Age Discrimination in Employment Act ("ADEA").  Krnich also brought claims under the Illinois Wage Payment and Collection Act, the Fair Labor Standards Act, and the Illinois Minimum Wage Law.

On February 10, 2020, Krnich and FPC stipulated and agreed to voluntarily dismiss, with prejudice, Counts II, III, and IV.  *See* Stipulation of Dismissal (Dckt. No. 26).  So the ADEA claim is the last remaining claim.

FPC now moves for summary judgment on Krnich's claim of age discrimination under the ADEA.

### Objections

Before diving into the analysis, the Court will address a blizzard of objections that Krnich made to declarations proffered by FPC.  The company supported its motion by offering declarations from Michael Kamins, Patrick Kamins, and Ullmann.  Krnich moved to strike the

declarations, in whole or in part, for a variety of reasons.  *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 3–6 (Dckt. No. 52).

An affidavit or declaration offered to support or oppose a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."  *See* Fed. R. Civ. P. 56(c)(4). Otherwise, the affidavit or declaration lacks evidentiary value and adds nothing at the summary judgment stage.  *See Zayre Corp. v. S.M. & R. Co.*, 882 F.2d 1145, 1148–49 (7th Cir. 1989); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir.1989).

Krnich's objections fall into four categories.  First, Krnich argues that the declarations lack foundation.  That objection doesn't get Krnich very far.

The declarations rest on the personal experiences of the declarants.  That is, they relied on their positions with FPC and their experience working with Krnich.  *See* Patrick Kamins Decl., at ¶ 2 (Dckt. No. 50-2); Michael Kamins Decl., at ¶ 2 (Dckt. No. 50-7); David Ullmann Decl., at ¶¶ 2–3, 13 (Dckt. No. 50-8).  Ullmann also relied on his experience working with Krnich's replacement.  *See* David Ullmann Decl., at ¶ 13.  Employment can provide the foundation for facts and perceptions relating to that employment.  *See Wilmington Sav. Fund Soc'y, FSB v. Hutchins*, 2020 WL 1910284, at *5 (D.N.M. 2020).  They can testify about what they personally saw, heard, understood, and believed.

Second, Krnich objects that certain portions of the declarations are speculative. Specifically, Krnich argues this Court should strike any paragraphs that discuss the declarant's "impression" or "understanding."  *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 4–5 (Dckt. No. 52).  But having impressions and understandings is part of everyday life.

The key is that inferences and opinions must rest on personal knowledge, meaning that they must come from specific observations or first-hand experience. *See Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998); *United States v. Giovannetti*, 919 F.2d 1223, 1226 (7th Cir. 1990). Opinions that come out of nowhere, and rest on nothing, aren't particularly useful. But testimony about a person's impressions, understandings, perceptions, and beliefs is fair game if it comes from personal experience. And here, the declarations rest on the personal experiences of the three declarants.

Third, Krnich argues that portions of the declaration of Michael Kamins are inadmissible hearsay. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 4–5 (Dckt. No. 52). Krnich takes issue with a paragraph about his understanding of Emily Michka's departure. Michael Kamins stated in his declaration that he did not know the reasons for Michka's departure, and he deferred to his brother Patrick on whether she resigned or was terminated. *See* Michael Kamins Decl., at ¶ 8 (Dckt. No. 50-7). In effect, Krnich is objecting when a witness admitted that he did not know.

Fourth, Krnich argues that portions of Ullmann's testimony are improper expert testimony. Krnich points out that FPC did not disclose Ullmann as an expert witness, and that FPC has not laid the foundation for any such expert testimony by describing his industry background or job duties. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 5 (Dckt. No. 52).

But Ullmann isn't an expert witness. He's a fact witness. His declaration describes his personal experience in the events in question, including why he did what he did. As a fact witness, Ullmann could testify about his state of mind, including his motivations for his decisions.

At times, Krnich seems to question the reliability of the information that Ullmann received, suggesting that his beliefs were ill-founded. But the issue is what Ullmann believed

and why he did what he did.  It is not problematic if he made a decision based on faulty information, as long as he made that decision for non-discriminatory reasons.  He did not need to make employment decisions based on information that could pass through the rigors of the Federal Rules of Evidence.  *See Waters v. Churchill*, 511 U.S. 661, 676 (1994) ("But employers, public and private, often do rely on hearsay, on past similar conduct, on their personal knowledge of people's credibility, and on other factors that the judicial process ignores. . . . What works best in judicial proceeding may not be appropriate in the employment context."); *Roberts v. Separators, Inc.*, 172 F.3d 448, 453 (7th Cir. 1999).

The request to strike the declarations is denied.

### Legal Standard

A district court "shall grant" summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a).  The Court's role is not to decide who is right, or to pick which side is telling the most convincing story.  The Court should not "weigh conflicting evidence . . . or make credibility determinations."  *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (citations omitted).  Instead, the Court simply "determine[s] whether there is a genuine issue for trial."  *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (cleaned up).  That is, the basic decision is whether there is enough evidence to get to a trial in the first place.

The Court must "constru[e] the facts and mak[e] reasonable inferences in favor of the nonmovant."  *H.P. by & Through W.P. v. Naperville Cmty. Unit Sch. Dist. #203*, 910 F.3d 957, 960 (7th Cir. 2018) (cleaned up).  So, the Court must view the evidence in the light most favorable to Krnich, the nonmovant.

If the party moving for summary judgment shows that there is no disputed issue of material fact, the burden shifts to the nonmovant, who must show more than "some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (cleaned up); *see also Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott*, 530 U.S. at 380 (emphasis in original, cleaned up).

In ruling on an ADEA claim at summary judgment, the Court must ask "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [age] caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The Court considers the evidence as a whole, "rather than asking whether any particular piece of evidence proves the case by itself." *Id.*

"[T]he plaintiff's age must have actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 141 (2000) (brackets in original, cleaned up); *see also Ky. Ret. Sys. v. EEOC*, 554 U.S. 135, 143–48 (2008) (holding that pension calculations that accounted for age did not violate the ADEA because they were not "actually motivated by age") (cleaned up); *Carson v. Lake County*, 865 F.3d 526, 532 (7th Cir. 2017) ("A plaintiff seeking to recover for disparate treatment under the ADEA must 'prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action.'") (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009)).

"[I]t's not enough to show that age was *a* motivating factor. The plaintiff must prove that, but for his age, the adverse action would not have occurred." *McDaniel v. Progress Rail*

*Locomotive, Inc.*, 940 F.3d 360, 367 (7th Cir. 2019) (cleaned up, emphasis in original). The "same analytical framework" applies to all "employment discrimination cases[,] whether they are brought under the ADEA or Title VII." *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 n.3 (7th Cir. 2009).

### Discussion

Krnich claims that FPC fired her because of her age. *See* Cplt. (Dckt. No. 1). At the summary judgment stage, the Court must determine whether there is a genuine dispute of material fact about whether FPC fired Krnich based on her age. *See Carson*, 865 F.3d at 532. Under the ADEA, age must be the "but-for" cause of Krnich's firing. *Id.*

So, to survive summary judgment, Krnich must come forward with evidence that FPC fired her because of her age. A plaintiff can carry that burden by introducing direct or circumstantial evidence that her employer took an adverse action because of her age, or by using the burden-shifting framework of *McDonnell Douglas*. *Id.* at 532–33.

This Court grants summary judgment to FPC because Krnich has not come forward with evidence that the company fired her because of her age.

## I.     Direct or Circumstantial Evidence

The first question is whether there is direct or circumstantial evidence that FPC fired her because of her age. The evidence in the record is not enough to get to a jury.

"An ADEA plaintiff may proceed by introducing direct or circumstantial evidence that her employer took an adverse action against her because of her age." *Id.* Direct evidence typically requires an outward expression of discriminatory animus, while circumstantial evidence reveals a discriminatory motive through a chain of inferences. *See Monroe v. Ind. Dep't of*

*Transp.*, 871 F.3d 495, 504 (7th Cir. 2017); *Mach v. Will Cty. Sheriff*, 580 F.3d 495, 499 (7th Cir. 2009).

Krnich argues that FPC's actions were discriminatory because her superiors made age-related remarks. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 10–11 (Dckt. No. 52). She points to a comment by Ullmann, and a few comments by Michael and Patrick Kamins.

The Court will take them up, in that order. The Court concludes that there is not enough evidence in the record to support a jury verdict in Krnich's favor.

### A.    Ullmann's Age-Related Statement

Krnich does not come forward with much evidence that Ullmann acted with a discriminatory animus. She relies on a single statement by Ullmann that "all the young college students" use Adobe Photoshop. *See* Pl.'s Statement of Additional Facts, at ¶ 10 (Dckt. No. 53).

A lone statement is generally insufficient to defeat summary judgment. *See Nichols v. S. Illinois Univ.-Edwardsville*, 510 F.3d 772, 781–82 (7th Cir. 2007) ("We have held . . . that stray remarks that are neither proximate nor related to the employment decision are insufficient to defeat summary judgment.") (cleaned up). However, a single comment or remark can raise an inference of discrimination when it is "(1) made by the decision-maker, (2) around the time of the decision, and (3) referred to the challenged employment action." *See Mach*, 580 F.3d at 499; *see also Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 885–86 (7th Cir. 2016). Temporal proximity is important, but is not necessarily required. *See Nagle*, 554 F.3d at 1115 ("[A]ge and race-based comments, in some cases occurring months before or after the alleged discriminatory act and in others at unspecified times, can still be considered under the direct method."); *see also Paz v. Wauconda Healthcare & Rehab. Centre, LLC*, 464 F.3d 659, 666 (7th Cir. 2006) ("It is worth mentioning that the district court and Wauconda were under the mistaken

belief that Paz cannot proceed under the direct method because some of Li's comments were made two months prior to her firing. Yet, how recent the comments were, how extreme, and who made the remarks are pieces of evidence that inform whether there was a 'mosaic of discrimination.'") (citation omitted); *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 711 (7th Cir. 2000).

Here, there is evidence of only one remark: "all the young college students" use Adobe Photoshop. *See* Pl.'s Statement of Additional Facts, at ¶ 10 (Dckt. No. 53). Ullmann was Krnich's supervisor and the decisionmaker in her termination. *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶ 11 (Dckt. No. 53). But there's nothing tying that comment to her termination.

The record does not reveal when Ullmann made that comment. There's no evidence that he made that remark during the meeting about her termination, or shortly before or after. There's no evidence that he pointed to young people when explaining his termination decision. In fact, there's no evidence tying this comment to Krnich's job performance.

One comment about young people's capabilities with software is not enough of a basis for a discrimination claim, especially when there is nothing tying that comment to the decision in question. There's no temporal link. And there's no substantive link, either, meaning that Ullmann did not express a preference for young people when giving the reason for the termination. The comment did not refer to Krnich at all (at least not expressly).

### B. Cat's Paw Theory of Liability

Krnich also points to comments by Michael and Patrick Kamins, the two senior executives of the company.

Krnich invokes the cat's paw theory of liability, "meaning that the ultimate decisionmaker issued an adverse employment action based on the discriminatory animus of another." *McDaniel*, 940 F.3d at 370. Under the cat's paw theory, a biased supervisor, who lacks decisionmaking power, uses the formal decisionmaker in a deliberate scheme to trigger a discriminatory employment action. *See Sinha v. Bradley Univ.*, 995 F.3d 568, 574 (7th Cir. 2021).

To succeed under that theory, a plaintiff must come forward with evidence that the biased supervisor both "actually harbored discriminatory animus" and that his or her "input was a proximate cause" of the adverse action. *See McDaniel*, 940 F.3d at 370 (citation omitted). The employer will not be liable if the decisionmaker conducts his or her own investigation and is not wholly dependent on a single source. *Id.* The cat's paw theory requires a showing of both discriminatory animus and proximate causation, so the inquiry can end if there is insufficient evidence on either prong. *See Sinha*, 995 F.3d at 574.

Krnich's theory goes as follows. Michael and Patrick Kamins harbored ill will toward older employees. They may not have made the decision to fire Krnich, but they did have control over Ullmann, the ultimate decisionmaker. And the age-related remarks by Michael and Patrick Kamins prompted Ullmann to replace Krnich.

Krnich did come forward with evidence that Michael and Patrick Kamins made age-related comments from time to time. For example, they said that "I'll get the younger girl to do it," and "there are a lot of little Emilies (referring to Michka) around here, Koula." *See* Pl.'s Statement of Additional Facts, at ¶¶ 12–13 (Dckt. No. 53). Michael Kamins also commented that he "could just hire young college students who would be able to use newer software programs," and that young people have great ideas. *Id.* at ¶¶ 14–15.

Even if those comments reveal a preference for younger employees (and a discriminatory animus against older employees), that preference would not be enough to give rise to a claim here. Krnich would need to tie those individuals to the adverse employment action, and thus demonstrate proximate causation.

Krnich failed to produce any evidence that any alleged bias by Michael or Patrick Kamins proximately caused Krnich's termination. In fact, there is no evidence that they played any role in the decision to fire her.

Krnich offers evidence, but it is not on point. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 8 (Dckt. No. 52) (citing Pl.'s Additional Statement of Facts, at ¶¶ 4, 10, 12–16 (Dckt. No. 53)). She comes forward with evidence that Michael and Patrick Kamins made age-related remarks. *See* Pl.'s Additional Statement of Facts, at ¶¶ 4, 10, 12–16. But she offers no evidence that the two of them played a role in the termination decision.

True, Michael and Patrick Kamins were in the room when the company told Krnich about her termination. *See* Krnich Dep., at 24:3-24 (Dckt. No. 50-3). But physical proximity is not enough. There's no evidence that they participated in the *decision* to terminate her. Without evidence of involvement in the decisionmaking, there's no evidence of proximate causation, which means there's no evidence to support a cat's paw theory.

Krnich could not establish proximate causation even if she had evidence that Michael and Patrick Kamins gave input to Ullmann. There is no cat's paw liability if the decisionmaker came to his or her decision independently, even if that person received input from someone else. *See McDaniel*, 940 F.3d at 370. There is no evidence that Ullmann was "wholly dependent" on Michael and Patrick Kamins. In fact, the record shows that that Ullmann was personally familiar with Krnich's work product. *See* Def.'s Statement of Facts, at ¶¶ 14, 19–34 (Dckt. No. 50).

14

As a result, Krnich has failed to come forward with evidence that could give rise to liability under a cat's paw theory.

## II.    *McDonnell Douglas*

Krnich primarily argues that FPC's actions were discriminatory under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 3 (Dckt. No. 52).  Although the "*McDonnell Douglas* framework is not the only method plaintiffs may use to prove their claim," it is "one way of culling the relevant evidence needed to demonstrate whether a reasonable factfinder could conclude that an employer engaged in an adverse employment action based on the plaintiff's age or another proscribed factor."  *McDaniel*, 940 F.3d at 368 (cleaned up); *see also David v. Bd. of Tr. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017).

The *McDonnell Douglas* framework allows a plaintiff to build a *prima facie* case with four elements.  "Under this approach, the plaintiff must show evidence that (1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably."  *McDaniel*, 940 F.3d at 368 (cleaned up).  "If the plaintiff meets each element of her prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual."  *Id.*

Only one of the four elements of a *prima facie* case is genuinely at issue here.  FPC does not dispute that Krnich is more than 40 years old, making her part of the class protected by the ADEA (*i.e.*, element one).  *See* 29 U.S.C. § 631(a); Def.'s Statement of Facts, at ¶ 5 (Dckt. No.

15

50). Termination is an adverse employment action, too (*i.e.*, element three). *See, e.g.*, *Stelter v. Wis. Physicians Serv. Ins. Corp.*, 950 F.3d 488, 491 (7th Cir. 2020).

The company treated a similarly situated employee more favorably, as well (*i.e.,* element four). *See McDaniel*, 940 F.3d at 368 (cleaned up). A plaintiff can satisfy that element by showing that the company replaced her with someone who is substantially younger. *See Hoffmann v. Primedia Special Interest Publ'n*, 217 F.3d 522, 524 (7th Cir. 2000) ("[W]here a single employee is let go and another individual is hired instead, the fourth requirement means showing that the discharged worker was replaced with someone substantially younger."); *see also Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 321 (7th Cir. 2003); *Denisi v. Dominick's Finer Foods, Inc.*, 99 F.3d 860, 864 (7th Cir. 1996); *Prochaska v. Menard, Inc.*, 829 F. Supp. 2d 710, 718–21 (W.D. Wis. 2011). Substantially younger in the Seventh Circuit generally means at least 10 years. *See Balderston*, 328 F.3d at 322.

Krnich identified Stephanie Daniel as a potential comparator in her opposition to FPC's motion. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 10, 13 (Dckt. No. 52). Krnich was in her early 50s when she was replaced by Stephanie Daniel, who at the time was in her late 20s. *Id.* at 10; Pl.'s Statement of Additional Facts, at ¶ 17 (Dckt. No. 53); FPC Employee Census (Dckt. No. 53-9). Daniel was hired into the same role that Krnich previously occupied, and she was supervised by Ullmann. *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶ 40 (Dckt. No. 53). She is more than 20 years younger than Krnich. *Id.* As a result, Krnich presented undisputed evidence to satisfy prong four.

The record supports three of the four elements, so only the second element is left. The question is whether Krnich was meeting the company's legitimate expectations. But that inquiry merges with the question whether the company's explanation for her termination was pretextual.

16

They merge because the issue is the same – whether the employer is lying about the reason for termination. *See Senske v. Sybase, Inc.*, 588 F.3d 501, 507 (7th Cir. 2009); *Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 823 (7th Cir. 2006) ("[I]f the plaintiffs argue that they have performed satisfactorily and the employer is lying about the business expectations required for the position, the second prong and the pretext question seemingly merge because the issue is the same – whether the employer is lying.").

Krnich argues that FPC is lying about the basis of her termination. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 7 (Dckt. No. 52). The *McDonnell Douglas* test has flexibility. *See Ismail v. Brennan*, 654 F. App'x 240, 243 (7th Cir. 2016). Some of the *prima facie* factors may be unnecessary when the people judging Krnich's performance are the same people she accuses of discriminating against her. *Id.* As a result, when an employee argues that the employer is "lying about its legitimate employment expectations in order to set up a false rationale for terminating [her]," the second prong and the pretext question merge because the issue is the same – whether the employer is lying. *Senske*, 588 F.3d at 507. If the employee cannot present evidence of pretext, then the employee cannot show that he or she was meeting expectations. *Id.*

Krnich's case boils down to whether FPC's reasons for terminating her were pretextual. Krnich has failed to meet her burden. Her case fails as a matter of law because there is no evidence that FPC's legitimate, nondiscriminatory reason for her termination – replacing her with a better-trained and more-qualified employee – was pretext for age discrimination.

FPC satisfied its burden under *McDonnell Douglas* by presenting evidence of a legitimate nondiscriminatory reason for Krnich's termination. FPC argues that it replaced Krnich because it needed a graphic designer with more expertise and training than Krnich to reduce the back-

17

and-forth and lower the cost of the graphic design process. *See* Def.'s Statement of Facts, at ¶¶ 36, 39 (Dckt. No. 50).

According to FPC, Stephanie Daniel was a better designer. While Ullmann observed Krnich repeating significant errors – causing delays and costing tens of thousands of dollars – he knew based on prior experience that Daniel was detail oriented and an excellent performer. *Id.* at ¶¶ 14, 19–34, 38. Unlike Krnich, Daniel had a college degree in graphic design, and she had training in Adobe, too. *Id.* at ¶¶ 13, 18, 37. She didn't have as much work experience as Krnich, but her work experience in the area was significant (six years). *Id.* Viewed as a whole, that showing is enough under *McDonnell Douglas*. *See Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1145 (7th Cir.1994) (explaining that an employer's mere production of a legitimate nondiscriminatory reason for its action rebuts the presumption of discrimination created by the prima facie showing).

At this point, the burden shifts back to Krnich to present evidence that FPC's reason was pretextual, and that FPC fired her because she was old. *See McDonnell Douglas*, 411 U.S. at 804. To show pretext, a plaintiff must come forward with evidence that "(a) the employer's nondiscriminatory reason was dishonest; and (b) the employer's true reason was based on a discriminatory intent." *Perez v. Illinois*, 488 F.3d 773, 777 (7th Cir. 2007) (cleaned up).

The law punishes discriminatory motives, not bad or bungled business decisions. "It is not the court's concern that an employer may be wrong about its employee's performance, or may be too hard on its employee." *Coleman v. Donahoe*, 667 F.3d 835, 852 (7th Cir. 2012) (cleaned up). "The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). "[T]he only

question is whether the employer's proffered reason . . . was a lie." *Coleman*, 667 F.3d at 852 (cleaned up).

Showing pretext does not require a smoking gun, but a plaintiff must do more than argue that he or she shouldn't have been fired. *See O'Leary*, 657 F.3d at 635 ("Where, as here, the employer contends that the plaintiff's job performance was wanting, the plaintiff must do more than dispute the validity of the employer's criticisms."); *Russell v. Acme–Evans Co.*, 51 F.3d 64, 69 (7th Cir. 1995) (holding that plaintiff's own opinion that his performance was adequate did not create a genuine factual dispute over whether the defendant-employer's performance criticisms were pretextual). A plaintiff must "identify such weaknesses, implausibilities, inconsistencies, or contradictions" in the defendant's offered reason that a reasonable person could disbelieve it was the real reason. *Coleman*, 667 F.3d at 852.

Krnich must show that a reasonable jury could disbelieve that FPC replaced her because she was less qualified and trained. And Krnich must "provide evidence of at least an inference that the *real* reason . . . was discriminatory." *Perez*, 488 F.3d at 778 (cleaned up, emphasis added).

Krnich offers a slew of reasons that FPC's legitimate nondiscriminatory reason was pretextual. Even viewing them in a light favorable to Krnich, they are not enough to support a finding by a reasonable jury that FPC is lying.

First, Krnich basically argues that the decision was pretextual because her mistakes were no big deal. To her credit, Krnich admits that she made mistakes from time to time. *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶ 22 (Dckt. No. 53). However, she argues that these mistakes were part of the normal back-and-forth design process. *Id.* at ¶ 22; Pl.'s Statement of Additional Facts, at ¶¶ 8–9 (Dckt. No. 53). They did not involve final versions. *Id.* And in any

event, drafts with mistakes were approved by other employees, so she did not stick out as an under-performing employee. *Id.*

Krnich does not genuinely dispute the facts that FPC relied on in terminating her. For example, she does not dispute that she made mistakes, lacked Adobe training, and didn't have a college degree or formal training in graphic design. *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶¶ 18, 20, 22 (Dckt. No. 53). She merely disagrees with FPC's reasons. *See Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 646 (7th Cir. 2013) (finding that merely disagreeing with an employer's reasons does not make them pretextual).

It does not matter that Krnich thought that she was doing a good job or even that other employees reviewed and approved of her work. *See Wyninger v. New Venture Gear, Inc.,* 361 F.3d 965, 980 (7th Cir. 2004) ("An employee's self-evaluation cannot create an issue of fact about an employer's honest assessment of inadequate performance."); *Russell*, 51 F.3d at 69 (holding that the plaintiff's own opinion that his performance was adequate did not create a genuine factual dispute over whether the defendant-employer's performance criticisms were pretextual); *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) (holding the general statements of co-workers indicating the plaintiff's job performance was satisfactory are insufficient to create a material issue of fact).

Maybe Ullmann was wrong, and made a bad personnel decision. But that's not enough. A discrimination claim requires a showing that her supervisor was dishonest – that is, that the supervisor took an adverse action against her for a reason that was different than the proffered reason. And here, Krnich comes forward with no such evidence.

What matters is Ullmann's honest belief about her performance at the time of her termination. *See Igasaki v. Illinois Dep't of Fin. and Pro. Regul.*, 988 F.3d 948, 959 (7th Cir.

2021).  Krnich did not provide any evidence disputing Ullmann's honest beliefs about the quality of her work or reasons for terminating her, so Krnich's argument fails.  *See O'Leary*, 657 F.3d at 635.

Second, Krnich points to her long and successful employment history.  *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 7–10 (Dckt. No. 52).  Krnich points to a track record of success in her job, including the raise and bonus she received in 2017, and the lack of any negative feedback or warnings.  *Id.*; Pl.'s Resp. to Def.'s Statement of Facts, at ¶¶ 2, 5 (Dckt. No. 53); Pl.'s Additional Statement of Facts, at ¶¶ 6, 17 (Dckt. No. 53).

But having a positive work history, standing alone, does not demonstrate pretext.  Instead, the focal point is Krnich's performance at the time of the adverse employment action.  *See Igasaki*, 988 F.3d at 959 ("Put differently, past positive evaluations do not guarantee future employment."); *but see Barnhart v. Mack Trucks, Inc.*, 157 F.R.D. 427, 431 n.4 (N.D. Ill. 1994) (finding 14 years of employment alone satisfies meeting legitimate expectations).  And in any event, Ullmann wasn't there for most of her tenure as a graphic designer.

Her raise and bonus in 2017 are not probative, either.  It is undisputed that FPC gave raises and bonuses on the same schedule to all employees, regardless of job performance.  *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶ 9 (Dckt. No. 53).

The absence of progressive discipline – such as warnings to the employee about poor performance – can support a finding of pretext if an employer failed to follow its own internal procedures.  *See Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 727 (7th Cir. 2005) ("[A]n employer's failure to follow its own internal employment procedures can constitute evidence of pretext.").  But to indicate pretext, there must be a regularly enforced specific policy.  *See Bagwe*, 811 F.3d at 882 (finding that there must be evidence of a specific policy that is regularly

21

enforced and followed for deviation from the policy to be indicative of discrimination). While FPC did have a handbook that provided progressive discipline as an option, progressive discipline was discretionary, not mandatory, and the company did not use that approach in practice. *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶ 55 (Dckt. No. 53). There is no evidence that FPC failed to follow a regularly enforced policy of ramping-up discipline before termination. Thus, Krnich's arguments about her long successful work history fail to support a finding of pretext.

Third, Krnich argues that she was more qualified than Daniel (her replacement) for the graphic design position. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 10 (Dckt. No. 52). Krnich points to her experience in designing FPC products and to her age as evidence of her superior qualifications. *Id.*; Pl.'s Statement of Additional Facts, at ¶¶ 5, 17–18 (Dckt. No. 53).

That evidence is not enough to show pretext. Evidence of "competing qualifications does not constitute evidence of pretext unless those differences are so favorable to [Krnich] that there can be no dispute among reasonable persons of impartial judgment that [Krnich] was clearly better qualified for the position." *Fischer v. Avanade, Inc.*, 519 F.3d 393, 404 (7th Cir. 2008) (cleaned up). The comparison needs to be so lopsided that reasonable minds could not differ.

It is true that Krnich had more than a decade of experience at FPC. But Daniel had factors in her favor, too. Daniel had roughly a decade of experience in graphic design, including four years of college plus six years in the workforce. *See* Def.'s Statement of Facts, at ¶ 41 (Dckt. No. 50). Ullmann had a positive experience with her, too. *Id.* at ¶ 41. He believed that Daniel was a "very efficient, extremely detail-oriented graphic designer" who made few mistakes. *Id.* at ¶ 43. He couldn't say the same thing about Krnich. *Id.*

22

Krnich disagrees with those characterizations, and she puts forward her own evidence. *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶ 43 (Dckt. No. 53). For example, in her affidavit, Krnich characterizes herself as detail oriented. *See* Krnich Aff., at ¶ 4 (Dckt. No. 53-2). But the question is not whether Ullmann was wrong. The question is whether Ullmann was dishonest – that is, whether he actually believed that Krnich was under-performing.

Krnich may believe that she is the better graphic designer. And maybe she's right. But it is not up to the jury to decide who FPC should have hired and fired for its positions. The relative experiences of the two employees were not so lopsided to give rise to an inference of pretext.

Fourth, Krnich argues that FPC found her performance errors after the fact, meaning after it made the termination decision. She alleges that FPC's rationale for her termination shifted, and that FPC is now pointing to errors that it didn't raise at the time. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 11–12 (Dckt. No. 52).

It is undisputed that Ullmann told her that her replacement was more skilled. *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶ 40 (Dckt. No. 53). It is undisputed that FPC pointed to three (and only three) performance errors in its EEOC statement. And it is undisputed that FPC is now pointing to more errors than it flagged for the EEOC.

But offering "more fulsome testimony" – testimony that does not contradict or conflict with earlier evidence – is not evidence of pretext. *See Fischer*, 519 F.3d at 407. Giving more examples of errors does not undermine the company's core position that Krnich made mistakes (in fact, even she admits that she made mistakes). Evidence of *other* mistakes does not undermine the notion that she made mistakes.

An employer is not duty-bound to itemize each and every error that an employee made when delivering bad news in a termination meeting. Giving a laundry list of the full universe of

23

errors isn't good for anyone.  It is understandable that an employer would come forward with the full list of errors only after being sued.

Fifth, Krnich argues that the age-related comments by Ullmann, Michael Kamins, and Patrick Kamins support a finding of pretext.  *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 10–11 (Dckt. No. 52).  However, as discussed above, these comments do not support an inference of discrimination.

Sixth, Krnich argues that her termination was not an isolated event.  Instead, she argues that it was part of a pattern and practice of replacing older workers with younger workers.  *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 10, 12–13 (Dckt. No. 52).  Krnich points to her former boss, Mike Praner.  Krnich suggests that the company effectively pushed him out and replaced him with a young employee (Emily Michka).  *Id.*; Pl.'s Additional Statement of Facts, at ¶ 4 (Dckt. No. 53).  Krnich believes that replacing Praner (an older employee) with Michka (a younger employee) is like replacing Krnich (an older employee) with Daniel (a younger employee).

The arrival of Michka and the departure of Praner do not support the notion that the company discriminated against Krnich.  There's no evidence that the company replaced Praner (an older employee) with Michka (a younger employee).  She did not take over his responsibilities, and did not supervise Krnich.  Since the company did not replace an older employee with a younger employee, it doesn't support the notion that there was a pattern.

The record shows that the company reduced Praner's role to save insurance costs.  *See* Def.'s Resp. to Pl.'s Additional Statement of Facts, at ¶ 4 (Dckt. No. 54).  Reducing compensation to save costs is not an ADEA violation.  *See Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1125–26 (7th Cir. 1994) ("Anderson could not prove age discrimination even if he

was fired simply because Baxter desired to reduce its salary costs by discharging him."); *see also Wilson v. Lear Corp.*, 2 F. App'x 576, 580 (7th Cir. 2001); *Larson v. Motor Werks of Barrington, Inc.*, 2018 WL 287747, at *7 (N.D. Ill. 2018). So the Praner example does not support the notion that the company had a track record of getting rid of older employees for impermissible reasons.

Finally, Krnich suggests that Adobe training wasn't that important because FPC failed to offer her Adobe training. Her argument goes something like this: FPC didn't train her in Adobe, so proficiency in Adobe must not have been important to the company. So the company must have been lying when it pointed to Daniel's proficiency in Adobe as a reason for the decision. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 12 (Dckt. No. 52); Pl.'s Additional Statement of Facts, at ¶ 11 (Dckt. No. 53). If Adobe training was important, FPC would have trained her.

The unavailability of training does not support a finding of dishonesty. The company showed a preference for someone who already had training. The company replaced Krnich (who needed training) with Daniel (who didn't). Maybe Ullmann should have offered her Adobe training (the Court offers no opinion). But even if the company should have given her training, the lack of training does not support an inference of dishonesty.

In the end, despite presenting many arguments, Krnich has not come forward with evidence that could support a finding by a reasonable jury that the company gave a pretexual explanation for its decision. *See Perez*, 488 F.3d at 778.

## III.    Totality of the Evidence

After searching for direct or circumstantial evidence, and after considering the *McDonnell Douglas* burden-shifting framework, the final step is to take a step back, and look at the big picture.

25

The Court must view the evidence as a whole and consider whether a reasonable jury could find that Krnich's firing was discriminatory. Courts must "assess cumulatively all the evidence presented by [the plaintiff] to determine whether it permits a reasonable factfinder to determine that [the adverse employment action] was attributable to her age . . . ." *David*, 846 F.3d at 224; *see also McDaniel*, 940 F.3d at 368.

Before *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), courts in this District often distinguished between "direct" and "indirect" methods of analyzing discrimination claims. *See Ortiz*, 834 F.3d at 763–66. The *McDonnell Douglas* burden-shifting framework often fell under the "indirect" method. *Id.* at 766. Without disapproving of the *McDonnell Douglas* framework, *Ortiz* explained that courts must get back to basics. "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence. Evidence is evidence." *Id.* at 765.

After considering the evidence as a whole, the Court concludes that no reasonable factfinder could conclude that FPC fired Krnich because of her age.

In the end, Krnich has presented no evidence connecting her termination with her age. When the company let her go, her supervisor did not make any comments about her age. Ullmann did not make any comments about the age of her replacement, either.[2] True, evidence of an outward expression of a discriminatory purpose isn't a necessary part of a discrimination

---

[2] Krnich says that "the decisionmakers told her that Daniel's [sic] was a 'young' college graduate" during her termination meeting. *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶ 40 (Dckt. No. 53). As support, she cites her deposition. But in her deposition, Krnich testified that FPC told her "they hired somebody else, and she just graduated from college." *See* Krnich Dep., at 29:3-16 (Dckt. No. 50-3). She didn't testify that the decisionmakers referred to her replacement as "young." True, there is likely a correlation between college graduation and youth (most people who graduate from college do so in their 20s). But here, this isolated reference is not enough to support an inference of age-based discrimination.

claim. But the lack of such evidence means that Krnich needed to come forward with something else to support her claims.

Krnich tries to fill the void by pointing to age-related comments in her workplace, but they're too thin to support a claim. Despite working for Ullmann for a year, there is evidence of only one comment that referred to age. And even then, it did not pack much of a punch. The notion that "all the young college students" use Adobe Photoshop does not move the needle very far in the direction of an animus against older employees. *See* Pl.'s Additional Statement of Facts, at ¶ 10 (Dckt. No. 53); Krnich Dep., at 102:14-20 (Dckt. No. 50-3).

Krnich worked at the company for over a decade, but came forward with only a handful of examples of other comments about the age of employees. The record includes five examples, all of which involve comments by Michael Kamins and Patrick Kamins.

First, one of them said "I'll get the younger girl to do it" when comparing Krnich to Emily Michka, a younger co-worker. *See* Pl.'s Additional Statement of Facts, at ¶ 12 (Dckt. No. 53); Krnich Dep., at 131:4 – 132:1 (Dckt. No. 50-3). Second, one of them referred to another employee, Haydn Beal, as "younger" (she was 25 at the time). *See* Pl.'s Additional Statement of Facts, at ¶ 12; Krnich Dep., at 132:15-19. Third, Michael Kamins said in March 2017 that "there are a lot of little Emilies (referring to Michka), around here, Koula" while walking around the office of Kaleidoscope, a company FPC worked with. *See* Pl.'s Additional Statement of Facts, at ¶ 13; Krnich Dep., at 133:16-24. Fourth, Michael Kamins said that "salesmen were dead" and that FPC "could just hire young college students who would be able to use newer software programs." *See* Pl.'s Additional Statement of Facts, at ¶ 14. Finally, Michael Kamins said that young people have great ideas. *Id.* at ¶ 15.

Those comments do not have enough heft to support a claim. The record does not reveal when many of those comments took place. At least one of them took place in March 2017, a full year before her termination. And as a matter of substance, they refer to age, but do not support much of an inference of animus against older employees. Several comments were not even directed at Krnich. She provides no reason to think that these stray remarks – so remote from her termination, made by people who didn't make the decision to fire her – expose the real reason she was shown the door.

Krnich's other evidence similarly fails to allow a reasonable factfinder to infer that age discrimination was FPC's true, unstated motivation for firing her. Krnich points to her decade of satisfactory work experience, including raises and bonuses. *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶¶ 2, 5 (Dckt. No. 53); Pl.'s Additional Statement of Facts, at ¶¶ 6, 17 (Dckt. No. 53). But "past performance is largely irrelevant . . . ." *See Igasaki*, 988 F.3d at 959. "[T]he issue is not the employee's past performance but whether the employee was performing well at the time of [her] termination." *Id.* (cleaned up); *see also Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998) ("Certainly, earlier evaluations cannot, by themselves, demonstrate the adequacy of performance at the crucial time when the employee action is taken.").

Additionally, since FPC did not have a regularly enforced progressive discipline policy, the absence of critical reviews or progressive discipline does not indicate age discrimination. *See Rudin*, 420 F.3d at 727 ("[A]n employer's failure to follow its own internal employment procedures can constitute evidence of pretext."); *Bagwe*, 811 F.3d at 882 (finding that there must be evidence of a mandatory specific policy that is regularly enforced and followed for deviation from the policy to be indicative of discrimination).

Similarly, Krnich argues that she had superior qualifications. Maybe she did. Maybe she was better than her replacement. And maybe the company made a mistake by replacing her. But that's not enough to support a claim. Sometimes the disparity in qualifications is so great that it gives rise to an inference of discrimination, but that's not this case. *See Fischer*, 519 F.3d at 404. The evidence is closer to a jump ball than a slam dunk in her favor.

Krnich points to FPC's failure to offer Adobe training as evidence of a discriminatory motive. But she offers no evidence that the company withheld training for a discriminatory reason. For example, this case does not involve a situation where the company provided training to younger employees, but not older employees. And if anything, the fact that Krnich needed training might support the notion that there was a non-discriminatory reason for her termination.

Krnich also argues that FPC's rationale for her termination shifted, and pointed to other mistakes after the fact. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 11–12 (Dckt. No. 52). As discussed above, it is not surprising that the company can give additional examples of mistakes. *See Fischer*, 519 F.3d at 407.

Finally, Krnich argues that FPC engaged in a pattern and practice of replacing older workers with younger workers. See Pl.'s Resp. to Def.'s Mtn. for Summ. J., at 10, 12 (Dckt. No. 52). Her theory is that the company replaced an older employee (Praner) with a younger employee (Michka). But as discussed above, that's not what happened.

Krnich may feel that she shouldn't have been fired. And she might be right – the Court expresses no opinion. Whether FPC was wise to fire Krnich is not at issue in this case. "[T]his court does not sit as a super-personnel department that reexamines an entity's business decisions." *Pagel v. TIN Inc.*, 695 F.3d 622, 630 (7th Cir. 2012) (cleaned up); *see also Coleman*,

29

667 F.3d at 862; *O'Leary*, 657 F.3d at 638.  The only question is whether FPC fired Krnich for discriminatory reasons.  And on that score, there is not enough to get to a jury.

## Conclusion

For the reasons stated above, FPC's motion for summary judgment is granted.

Date:   September 2, 2021

Steven C. Seeger
United States District Judge